UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL L. JACKSON, on behalf of himself and all others similarly situated,

                     Plaintiffs,

            -v.-

TOTAL RELOCATION SERVICES, LLC, FRIENDLY FIELD TECHNICIANS, LLC, CHRISTOPHER MARZO, and SUZANNE NOORMAN,

                   Defendants.

---

23 Civ. 4118 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Michael L. Jackson brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and certain provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160, 190–199-a, against his employers, which he defines to include entity defendants Total Relocation Services, LLC ("TRS") and Friendly Field Technicians, LLC ("FFT"), and individual defendants Christopher Marzo and Suzanne Noorman (collectively, "Defendants"). In brief, Plaintiff alleges that Defendants failed to pay him overtime wages, failed to pay him on time, failed to pay him for all hours worked, failed to furnish wage statements to him, and retaliated against him, in violation of the FLSA and the NYLL.

Plaintiff now moves for conditional certification of a collective action under Section 216(b) of the FLSA. He also moves for an order (i) compelling Defendants to furnish the names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers (including

cell phone numbers), social security numbers, and dates of employment of all covered employees; (ii) authorizing Plaintiff to circulate a "Court Authorized Notice of Lawsuit and Consent to Join" form by mail, email, and text message to all covered employees; (iii) authorizing Plaintiff to circulate a reminder notice by mail, email, and text message to all covered employees; (iv) directing that the proposed court-authorized notice of lawsuit and consent to join form be posted in a conspicuous place at the work locations of all covered employees for the duration of the opt-in notice period; (v) directing that the opt-in notice period for all covered employees remain open for 60 days; and (vi) ordering that the statute of limitations of potential opt-in plaintiffs' claims be tolled from the date of filing of this motion until such time that Plaintiff is able to send notice to all covered employees.  For the reasons set forth in this Opinion, the Court grants Plaintiff's motion for conditional collective certification in part; orders the parties to meet and confer regarding the proposed notices; grants in part Plaintiff's request for pre-certification discovery; and denies without prejudice Plaintiff's motion for equitable tolling.

**BACKGROUND**[1]

**A.    Factual Background**[2]

**1.    The Parties and the Relevant Policies**

Plaintiff claims that he has worked for Defendants as a non-exempt IT Hardware Technician since he was hired by Defendant Noorman on or about July 1, 2020 (FAC ¶¶ 2, 42, 79), though he was taken off the schedule after filing the original complaint in this action (Jackson Decl. ¶ 5).  In this role, Plaintiff "breaks down computer hardware, places the pieces in bags and then set[s] up the computer hardware in a new location."  (*Id.* ¶ 80; *see also* Jackson Decl. ¶ 6).  According to Plaintiff, Defendants have employed non-exempt IT

---

[1]    This Opinion draws its facts from the Complaint (Dkt. #1 ("Compl.")) and the First Amended Complaint (Dkt. #16 ("FAC")).  The Court also relies, as appropriate, on the Declaration of Amit Kumar (Dkt. #34 ("Kumar Decl.")); the Declaration of Michael L. Jackson (Dkt. #34-2 ("Jackson Decl.")); the Declaration of Ntaba John (Dkt. #34-3 ("John Decl.")); the Declaration of Xavier Powell (Dkt. #34-4 ("Powell Decl.")); the Declaration of Michelle Gumbs (Dkt. #34-5 ("Gumbs Decl.")); and the Declaration of Alton Dias (Dkt. #34-6 ("Dias Decl.")), submitted in connection with Plaintiff's motion for conditional certification, and certain of the exhibits attached thereto ("[Name] Decl., Ex. [ ]").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of his motion for conditional certification as "Pl. Br." (Dkt. #35); to Defendants Total Relocation Services, LLC's and Christopher Marzo's memorandum of law in opposition to Plaintiff's motion as "TRS Opp." (Dkt. #36); to Defendants Friendly Field Technicians, LLC's and Suzanne Noorman's memorandum of law in opposition to Plaintiff's motion as "FFT Opp." (Dkt. #37); and to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #42).

[2]    Plaintiff bears the burden of proof on a Section 216(b) motion for conditional certification.  Accordingly, the Court focuses primarily on Plaintiff's account of the facts at this stage of the litigation.  *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification).  The Court "grant[s] the plaintiff the benefit of the doubt given the posture of this motion."  *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)).  By contrast, the Court cannot and does not consider the factual assertions contained in Defendants' opposition briefs.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); *see also Bhumithanarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

Hardware Technicians throughout New York State for six years prior to the commencement of this action.  (FAC ¶ 77).  Plaintiff has provided these services on behalf of Defendants in various locations in New York, as well as in New Jersey, Pennsylvania, and Maryland.  (Jackson Decl. ¶ 7).

Plaintiff alleges that Defendant TRS, a New York limited liability company with its principal place of business in New Jersey (FAC ¶¶ 17-18), and Defendant FFT, a New Jersey limited liability company with its principal place of business in that state (*id.* ¶¶ 24-25), are owned and operated by Defendants Marzo and Noorman, who are both New Jersey residents (*id.* ¶¶ 30-49).  More specifically, Plaintiff claims that Defendant Marzo was the president, owner, and/or "day-to-day overseer of TRS" (*id.* ¶ 32), as well as a "member of FFT" (*id.* ¶ 33), who had the ability to hire and fire employees of both entities (*id.* ¶¶ 34-35).  Likewise, Plaintiff claims that Defendant Noorman was the "Director of IT Services, and/or day[-]to[-]day overseer of TRS" (*id.* ¶ 38), as well as the "president, member, owner, and/or day-to[-]day overseer of FFT" (*id.* ¶ 39), who had the ability to hire and fire employees of both entities (*id.* ¶¶ 40-41).

Defendants Marzo and Noorman "would tell Plaintiff and Class members what tasks to complete and [in] what time frame they needed to be completed" (FAC ¶ 43); require them to "give regular status updates concerning [their] work" (*id.* ¶ 44); "controlled the work schedule of TRS'[s] and FFT's employees" (*id.* ¶ 45); and "controlled the rates and methods of payment for each of TRS'[s] and FFT's employees" (*id.* ¶ 46).  Plaintiff and class members were required to wear a uniform with a TRS logo and send daily timesheets with the logo to

Defendants.  (*Id.* ¶¶ 100, 105).  Plaintiff further alleges that Defendants Marzo and Noorman "exercised close control over the managerial operations of both TRS and FFT" (*id.* ¶ 47); "controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing and as to wages with respect to the employees of both TRS and FFT" (*id.* ¶ 48); and "acted as the Plaintiff's and Class members' employer" (*id.* ¶ 49).  Furthermore, in his affidavit, Plaintiff claims to "know ... from [his] own personal experience" and based on "documents [he] received from the Defendants and from speaking with other non-exempt IT Hardware Technicians" that "the Defendants' employment and compensation policies are the same."  (Jackson Decl. ¶ 16 (citing Jackson Decl., Ex. A)).

### 2.    The Collective Allegations

On the specific issue of wage and hour violations, Plaintiff alleges that "Defendants withheld wages due and owing to [him] and [other employees] on a biweekly basis" (FAC ¶ 85) and "incorrectly designated [them] as independent contractors" (*id.* ¶ 89; *see also* Jackson Decl. ¶ 15), even though they worked full time for, and under the close supervision and control of, Defendants (*see* FAC ¶¶ 91-105).  In particular, Plaintiff alleges that, throughout his employment, Defendants did not pay him at the required one-and-one-half times the applicable regular rate for all hours worked over forty per week.  (*Id.* ¶ 114; *see also* Jackson Decl. ¶ 14).  In fact, Plaintiff alleges that Defendants (i) would require Plaintiff and other employees to work off the clock (FAC ¶ 110; *see also* Jackson Decl. ¶ 10 (citing Jackson Decl., Ex. A at 1005)); (ii) rounded

shifts down to the nearest half-hour (FAC ¶ 111; *see also* Jackson Decl. ¶ 11 (citing Jackson Decl., Ex. A at 1004-05)); and (iii) failed to pay employees who failed to provide timesheets (FAC ¶ 112.  According to Plaintiff, if an employee did not tell Defendants' clients that they were employed by Defendant TRS, then Defendants would "fine[] two hours of pay from that shift[,] or … if the Defendants did not know who broke the rule, everyone working that shift would be fined one hour of pay from that shift."  (*Id.* ¶ 106; *see also* Jackson Decl. ¶ 12 (citing Jackson Decl., Ex. A at 1010-11)).

Plaintiff claims this experience was not unique to him, and thus brings this action on behalf of a collective (the "Proposed Collective") consisting of

> all current and former persons who did work for Defendants (whether as employees or independent contractors) as non-exempt IT Hardware Technicians or similarly situated employees regardless of job title and worked in the State of New York from May 17, 2017 to the present.

(Pl. Br. 10).  According to Plaintiff, all of the members of the Proposed Collective "[i] performed similar tasks … ; [ii] were subject to the same laws and regulations; [iii] were paid in the same or similar manner; [iv] were required to work in excess of forty hours each workweek; and [v] were not paid the required rate … for all hours worked over forty in a workweek."  (FAC ¶ 64).

In support of his motion for conditional certification of the Proposed Collective, Plaintiff submitted an affidavit in which he claims that he "worked and spoke with at least [ten] other IT Hardware Technicians who performed similar work [as he did]" (Jackson Decl. ¶ 18), and "learned through [his] conversations with these and other IT Hardware Technicians as well as [his]

observations of other IT Hardware Technicians that the Defendants had similar pay policies for all of [them]" (*id.* ¶ 19).  According to Plaintiff, Defendant Noorman directly told him that "the Defendants do not pay overtime compensation to [their] employees (including Hardware Technicians)." (*Id.* ¶ 17).  Plaintiff also claims, based on personal observations and conversations, that these other employees were compensated on an hourly basis.  (*Id.* ¶ 23).  According to Plaintiff, his conversations with other employees happened at various locations around New York City.  (*Id.* ¶ 21).  Plaintiff specifically recounts two such conversations, each with employees whose first or last names are unknown to him.  (*Id.* ¶¶ 25-26).  Though Plaintiff claims to "know that there are other employees who work or worked for Defendants who" had similar experiences, he "cannot recall their names." (*Id.* ¶ 27).  In addition to his own affidavit, Plaintiff has submitted affidavits of other former employees of Defendants, which affidavits contain largely the same allegations.  (*See* John Decl.; Powell Decl.; Gumbs Decl.; Dias Decl.).  Notably, in these affidavits, these other employees claim to have worked and spoken with additional IT Hardware Technicians about Defendants' compensation policies.  (*See* John Decl. ¶¶ 16, 23; Powell Decl. ¶¶ 16, 23; Gumbs Decl. ¶¶ 16, 23; Dias Decl. ¶¶ 16, 23).

## B.    Procedural Background

Plaintiff initiated this action by filing a complaint on May 17, 2023 (the "Complaint").  The Complaint brings claims under the FLSA, the NYLL, and corresponding regulations, on behalf of Plaintiff and the Proposed Collective.

7

(*See generally* Compl.).  Defendants TRS and Marzo filed an answer on
June 22, 2023.  (Dkt. #15).  Plaintiff filed an amended complaint (the "First
Amended Complaint" or "FAC") on July 7, 2023.  (Dkt. #16).  Defendants TRS
and Marzo filed an answer to the First Amended Complaint on July 13, 2023,
that included cross-claims against Defendants Noorman and FFT.  (Dkt. #19).
Defendants FFT and Noorman then filed an answer to the First Amended
Complaint on October 13, 2023 (Dkt. #23), followed by an amended answer
(Dkt. #24), both including cross-claims against Defendants TRS and Marzo.
The Court held an initial pre-trial conference on March 14, 2024, and it
entered a case management plan and scheduling order on March 15, 2024.
(Dkt. #32).

On April 19, 2024, Plaintiff filed the instant motion for conditional
certification.  (Dkt. #33-35).  Defendants TRS and Marzo filed their
memorandum of law in opposition on May 22, 2024.  (Dkt. #36).  On the same
date, Defendants FFT and Noorman filed their memorandum of law in
opposition.  (Dkt. #37).  Finally, on June 7, 2024, Plaintiff filed a reply
memorandum of law in further support of his motion.  (Dkt. #42).

## DISCUSSION

### A.    Applicable Law

#### 1.    The Fair Labor Standards Act

The FLSA permits an aggrieved employee to bring a "collective" action
against her employer for unlawful employment practices.  Specifically, the
statute authorizes "any one or more employees[,] for and [on] behalf of himself

or themselves and other employees similarly situated," to bring a lawsuit against her employer.  29 U.S.C. § 216(b).

Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness for the purposes of certification.  *Compare Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (noting that "no showing of numerosity, typicality, commonality and representativeness need be made" in a collective action (quoting *Foster* v. *Food Emporium*, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000))), *with Wilner* v. *OSI Collection Servs., Inc.*, 198 F.R.D. 393, 396 (S.D.N.Y. 2001) (requiring showing of "numerosity, commonality, typicality, and adequacy of representation" in a class action); *see also* Fed. R. Civ. P. 23(a).  Also unlike Rule 23 class actions, in which putative class members must affirmatively "opt-out" to avoid being bound by the judgment, in collective actions, "only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (internal quotation marks omitted)).

Finally, a court presiding over a collective action is tasked with approving, at its discretion, a plaintiff's proposed procedures for "noti[fying] ... potential plaintiffs of the pendency of the action and of their opportunity to opt-

in as represented plaintiffs." *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted).

### 2.    Certifying a FLSA Collective Action

"While the [FLSA] does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit." *Contrera* v. *Langer*, 278 F. Supp. 3d 702, 712 (S.D.N.Y. 2017) (citing *Hoffman-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).  "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification mechanism." *Id.* (citing *Myers*, 624 F.3d at 555 n.10).  District courts have discretion "'to implement [§ 216(b)] ... by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Geng* v. *Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *5 (S.D.N.Y. Sept. 9, 2019) (quoting *Myers*, 624 F.3d at 554) (internal quotation marks omitted)).

In the Second Circuit, the certification of a FLSA collective action proceeds in two steps.  *Myers*, 624 F.3d at 554-55; *accord Scott* v. *Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020).  The first step ("conditional certification") requires that the district court determine whether a plaintiff is "similarly situated" with other potential plaintiffs, such that those putative plaintiffs should receive notice of the pending action and an opportunity to join it.  *Myers*, 624 F.3d at 555.  Named and opt-in "plaintiffs

10

are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516.  A plaintiff's burden at this stage is low; to establish that she is "similarly situated" with other potential plaintiffs, she need only "make a modest factual showing that [she] and others together were victims of a common policy or plan that violated the law."  *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016); *see also Myers*, 624 F.3d at 555 ("[T]he purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." (internal quotation marks omitted)); *McGlone* v. *Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) ("Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'" (quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007))); *Hoffman* v. *Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are similarly situated." (internal quotation marks omitted)).

Where a plaintiff's allegations involve employees at multiple business locations, "even where it is clear that multiple business locations share common ownership and management, plaintiffs must adduce enough evidence to support an inference of a common [policy] across all locations before a multi-location collective may be certified."  *Peralta* v. *CB Hosp. & Events, LLC*, No. 22 Civ. 10805 (GHW) (BCM), 2024 WL 916523, at *5 (S.D.N.Y. Mar. 4, 2024).  "In

11

this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work[.]" *Hamadou* v. *Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013); *see also Rosario* v. *Valentine Ave. Disc. Store, Co., Inc.,* 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011) (collecting cases).

To establish the requisite "modest factual showing," a plaintiff may "rely[] on [her] own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members." *Hallissey* v. *Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *see also Weng* v. *Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 Civ. 273 (LAP), 2018 WL 1737726, at *4 (S.D.N.Y. Mar. 26, 2018) ("For [p]laintiffs [seeking collective action certification] to meet their burden, they are obligated to provide some probative information regarding similarly situated employees such as their names, their duties and their hours worked." (internal quotation marks omitted)). "[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013).

Although "[p]laintiffs' burden at this stage is low ... it is not non-existent, and they cannot rely only upon unsupported assertions." *Mark* v. *Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (internal quotation marks omitted).  In other words, "certification is not automatic," *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41

(S.D.N.Y. 2018), and a plaintiff must put forth more than just "unsupported assertions" to warrant conditional certification, *Myers*, 624 F.3d at 555 (quoting *Dybach* v. *State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Taveras*, 324 F.R.D. at 41 ("Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations.").  Indeed, courts have declined to conditionally certify proposed collectives based on "plaintiffs' mere belief that the policies are the same at … other [locations]."  *Rojas* v. *Kalesmeno Corp.*, No. 17 Civ. 164 (JCF), 2017 WL 3085340, at *5 (S.D.N.Y. July 19, 2017); *see also Adam* v. *Bloomberg L.P.*, No. 21 Civ. 4775 (JLR) (JLC), 2023 WL 3814252, at *5 (S.D.N.Y. June 5, 2023) (denying conditional collective certification motion where plaintiffs failed to identify individuals who "potentially [had] the same duties and raise[d] the same claims"); *Hickmon* v. *Fun & Fit LLC*, No. 20 Civ. 10279 (RA) (JLC), 2021 WL 3578296, at *5-6 (S.D.N.Y. Aug. 13, 2021) (denying motion where plaintiffs failed to "identify any potentially similarly situated employees by name," did not "disclose how many employees [plaintiffs] conversed with," and "provide[d] no information regarding the timing or circumstances of any of these conversations").

Finally, courts "need not [at the conditional certification stage] evaluate the underlying merits of a plaintiff's claims[.]"  *Damassia* v. *Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006); *see also Hoffman*, 982 F. Supp. at 262.  That is, at the first step of the collective certification inquiry, courts should avoid "'resolv[ing] factual disputes,

decid[ing] substantive issues going to the ultimate merits [of the case], or mak[ing] credibility determinations.'" *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch* v. *United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  That is why courts cannot rely on affidavits or records submitted by FLSA defendants.  *See Cohen* v. *Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (declining to "wade into a thicket of competing factual assertions at [the] preliminary stage" of conditional certification).

The second stage of collective action certification occurs *after* the court-authorized notice is sent, putative plaintiffs have had the opportunity to opt into the collective action, and discovery has closed.  *See, e.g.*, *McGlone* v. *Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 366-67 (S.D.N.Y. 2014).  This second step involves a "more stringent factual determination," *Lynch*, 491 F. Supp. 2d at 368, and requires the court, "on a fuller record," to "determin[e] whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555.  If the court determines that the opt-in plaintiffs are not in fact similarly situated, any collective that was conditionally certified at the first stage of the process may be "de-certified" and "opt-in plaintiffs' claims ... dismissed without prejudice."  *Id.*

### 3.     Defining the "Employer"

Under the "single integrated enterprise" or "single entity"[3] test, to

determine when "distinct but closely affiliated entities should be treated as a

single employer for FLSA purposes," courts consider the "[i] interrelation of

operations, [ii] centralized control of labor relations, [iii] common management,

and [iv] common ownership or financial control."  *Juarez* v. *449 Rest., Inc.*, 29

F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citing *Perez* v. *Westchester Foreign*

*Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28,

2013)); *see also Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (listing the

---

[3]     This analysis does not turn on any distinction between the "single entity" doctrine of employment and the "economic reality" theory of employment.  "The Second Circuit has not addressed whether the single employer doctrine applies in the FLSA context, but courts in this District often apply the doctrine in that context."  *In re Domino's Pizza Inc.*, No. 16 Civ. 6274 (AJN), 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018); *see also id.* at n.2 (noting that at least one other court has applied the economic reality theory, and not the single employer doctrine, in the FLSA context (citing *Hart* v. *Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 & n.16 (S.D.N.Y. 2013))); *Flores* v. *201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases).  Yet, the Second Circuit, in a recent summary order, cited both theories in the context of determining whether corporate defendants were "employers" within the meaning of the FLSA. *Compare Perez Perez* v. *Escobar Constr., Inc.*, No. 23-1240, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) (summary order) ("[T]his Circuit 'treat[s] employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" (quoting *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008))), *and id.* (citing the "economic reality" employment relationship test set forth in *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)), *with id.* at *4 ("[W]e have recognized that 'an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger "single-employer" entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.'" (quoting *Arculeo* v. *On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005))).  The Second Circuit in *Perez Perez* concluded that three corporate defendants were a single "employer" within the meaning of the FLSA after considering — "under the totality of the circumstances" — whether they: shared staff and work sites; paid employees from accounts belonging to all three entities; advertised collectively; and were ultimately controlled by one person.  *Id.* at *4.  This analysis is in line with the Second Circuit's practice of "treat[ing] employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

four factors); *Flores* v. *201 W. 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) ("[F]acts that go to the existence of a single, integrated enterprise include … the use of the same employees at multiple locations … use of the same central payroll office … and the distribution of common employee guidelines and procedures across different businesses." (internal quotation marks omitted)).  In the end, the focus of this analysis is whether the plaintiff has sufficiently alleged that the employees in the proposed collective are subject to a uniform policy or practice.  *See, e.g.*, *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-60 (S.D.N.Y. 2013).

## B.    Analysis

### 1.    The Court Conditionally Certifies a Collective Action

Because Plaintiff requests only conditional certification at this juncture, the Court need only make a preliminary determination as to whether "similarly situated" potential plaintiffs exist.  *See Myers*, 624 F.3d at 555.  In particular, Plaintiff seeks conditional certification of a collective of "all current and former persons who did work for Defendants (whether as employees or independent contractors) as non-exempt IT Hardware Technicians or similarly situated employees regardless of job title and worked in the State of New York from May 17, 2017 to the present."  (Pl. Br. 10).[4]  Defendants oppose conditional certification on two bases.  *First*, Defendants argue that the entity Defendants

---

[4]      While Plaintiff seeks certification of a collective action for employees who worked for Defendants over a six-year period, the limitations period for FLSA claims is in fact two years, "except that a cause of action arising out of a willful violation may be commenced within three years."  29 U.S.C. § 255(a); *see generally Whiteside* v. *Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021).

are not a joint employer; rather, they are improperly "lumped together" despite having "different owners, different operations, separate finances, and separate payroll." (TRS Opp. 3-4; *see also* FFT Opp. 5 ("FFT and TRS are separately owned entities with separate management and do not have any interrelated operations, other than coordinating the work that each company performs." (internal quotation marks omitted))). *Second*, Defendants argue that Plaintiff has failed to show that members of the Proposed Collective are similarly situated, because his assertions about conversations he had with other IT technicians are impermissibly vague and conclusory, and because they contain insufficient detail to identify certain prospective class members and establish when certain conversations took place. (*See* FFT Opp. 6-9; *see also* TRS Opp. 4-5). For the following reasons, the Court finds that conditional certification of the Proposed Collective is warranted, but it limits the scope of the Proposed Collective to exclude non-IT Hardware Technicians and limits the time period.

### a. Defendants Are a Single Employer for Purposes of Conditional Certification

As a threshold matter, the Court finds that Defendants are a single employer for purposes of conditional certification. Defendants oppose certification in part by contesting Plaintiff's assertion that Defendants are a single employer, offering in response the declaration of Defendant Marzo. (*See* FFT Opp. 5; TRS Opp. 4). Although Defendants' submissions contain factual assertions that contradict those of Plaintiff, such evidence goes to the merits of Plaintiff's claims rather than to the propriety of conditional certification. At

this stage, the Court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F. Supp. 2d at 368. As a result, it cannot rely on the sworn statement submitted by Defendant, nor the factual assertions made in Defendants' submissions. *See Bhumitharnarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015) ("Although Defendants have submitted to the Court voluminous documentation in the [form] of Defendants' affidavits and payroll logs ... attempting to demonstrate that ... no class should be conditionally certified, these materials clearly go to the merits of the case and Defendants' reliance upon them is misplaced at this stage[.]" (internal citation omitted)); *Fasanelli* v. *Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("[T]he initial class certification determination must be made on preliminary documents such as pleadings and affidavits .... [T]he Court is not being asked for a determination on the merits and the Defendant will have another opportunity to object to class certification after discovery.").

As discussed, to determine whether "distinct but closely affiliated entities should be treated as a single employer for FLSA purposes," courts consider the "[i] interrelation of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership or financial control." *Juarez*, 29 F. Supp. 3d at 367. These factors are "viewed under the totality of the circumstances," and can include allegations that the entities share staff, pay employees from one of the multiple entities, advertise collectively, and "are

ultimately controlled by [someone] who direct[s] the behind-the-scenes of all …
companies." *Perez Perez* v. *Escobar Constr., Inc.*, No. 23-1240, 2024 WL
3594325, at *4 (2d Cir. July 31, 2024) (summary order) (internal quotation
marks omitted). As with collective certification more generally, it is Plaintiff's
burden to provide some probative information regarding whether Defendants
are a single integrated employer. *See Weng*, 2018 WL 1737726, at *4. That
said, the evidentiary bar is low. *See McGlone*, 867 F. Supp. 2d at 442.

Plaintiff has sufficiently alleged that Defendants are a single integrated
employer for purposes of collective certification. He alleges that Defendants
share common ownership or management and have interrelated operations.
Specifically, he claims that Defendants TRS and FFT are owned and operated
by Defendants Marzo and Noorman, who oversaw, and had the ability to hire
and fire, employees of both entities (*see* FAC ¶¶ 30-35, 38-41), and who owned
all the beneficial interest in TRS and FFT (*see id.* ¶ 56). According to Plaintiff,
Defendants Marzo and Noorman supervised the day-to-day activities of Plaintiff
and other employees of TRS and FFT, controlled their work schedules, and
controlled their payment. (*See id.* ¶¶ 43-49, 58-59). Plaintiff also claims that
TRS and FFT use the same employee manuals, letterhead, and payroll
operations. (*See id.* ¶ 61). Finally, Plaintiff alleges that employees, regardless
of whether they were nominally employed by FFT or TRS, were fined if they did
not tell clients that they were employed by TRS (*see id.* ¶ 106; Jackson Decl.
¶ 12 (citing Jackson Decl., Ex. A at 1010-11)), and that Defendants had
nominal employees of each entity sign non-compete agreements forbidding

19

them to work for any company that competed with *either* TRS or FFT (FAC ¶ 60). "[V]iewed under the totality of the circumstances," *Perez Perez*, 2024 WL 3594325, at *4, Plaintiff has sufficiently alleged that Defendants are a single integrated employer.

> **b.    Plaintiff Has Met His Low Burden of Establishing a Common Policy or Plan That Violates the FLSA**

As a second line of attack, Defendants argue that Plaintiff has failed to "make [the requisite] modest factual showing that [he] and others together were victims of a common policy or plan that violated the [FSLA]," *Glatt*, 811 F.3d at 540, because Plaintiff's assertions about conversations he had with other IT Hardware Technicians are vague and conclusory (*see* FFT Opp. 6-9; TRS Opp. 4-5). Here, too, the Court disagrees.

Plaintiff's assertions are sufficient to warrant conditional certification. Once again, the Court notes that Plaintiff's burden is low.  *See Glatt*, 811 F.3d at 540.  Nevertheless, Plaintiff cannot meet this burden by relying upon "unsupported assertions," *Myers*, 624 F.3d at 555 (quoting *Dybach*, 942 F.2d at 1567), or "conclusory allegations," *Taveras*, 324 F.R.D. at 41.  Instead, Plaintiff must identify potentially similarly situated employees by name, disclose how many conversations he had with them, and provide information regarding the timing or circumstances of these conversations.  *Cf. Hickmon*, 2021 WL 3578296, at *5-6.  And, when multiple business locations are at issue, Plaintiff must show sufficient "evidence to support an inference of a common [policy] across all locations[.]"  *Peralta*, 2024 WL 916523, at *5.

In this case, Plaintiff has provided sufficient detail about Defendants'
alleged common policies of failing to pay overtime wages to IT Hardware
Technicians, failing to pay them on time, failing to pay them for all hours
worked, and failing to furnish wage statements to them.  Plaintiff claims that,
since July 2020, he has worked for Defendants as an IT Hardware Technician,
in which role he "breaks down computer hardware, places the pieces in bags
and then set[s] up the computer hardware in a new location."  (FAC ¶ 80; *see
also* Jackson Decl. ¶ 6).  Plaintiff alleges that Defendants withheld wages from
him and others in the Proposed Collective (FAC ¶ 85), incorrectly designated
employees as independent contractors (*id.* ¶ 89), did not pay the required one-
and-one-half times the applicable regular rate for all hours worked over forty
hours per week (*id.* ¶ 114; *see also* Jackson Decl. ¶ 14), required them to work
off the clock (FAC ¶ 110; *see also* Jackson Decl. ¶ 10 (citing Jackson Decl.,
Ex. A at 1005)), and rounded shifts down to the nearest half-hour (FAC ¶ 111;
*see also* Jackson Decl. ¶ 11 (citing Jackson Decl., Ex. A at 1004-05)), among
other allegations.  These allegations are based on Plaintiff's personal
experience, as well as his (and the other declarants') conversations with others
in the Proposed Collective.  Indeed, Plaintiff claims that he "worked and spoke
with at least [ten] other IT Hardware Technicians who performed similar work
[as he did]" (Jackson Decl. ¶ 18), through which he learned that Defendants
had similar policies for all of them" (*id.* ¶ 19).  Plaintiff specifically recounts two
such conversations (though he does not recall the other employees' full names)
(*id.* ¶¶ 25-26), and he claims to know of others who have had similar

21

experiences (*id.* ¶ 27). The other declarants also claim to have worked and spoken with additional IT Hardware Technicians, and have provided the names of those other technicians (sometimes full names, and sometimes partial names). (*See* John Decl. ¶¶ 16, 23; Powell Decl. ¶¶ 16, 23; Gumbs Decl. ¶¶ 16, 23; Dias Decl. ¶¶ 16, 23).

Defendants FFT and Noorman contend that "Plaintiff has failed to meet his burden as he has not provided any probative information in the Declarations regarding similarly situated employees[,] including but not limited to providing their *full* names, their duties[,] and hours worked." (FFT Opp. 6). In doing so they rely, in part, on *Weng*, 2018 WL 1737726, at *4, which is readily distinguishable. The district court in *Weng* certified a collective of delivery persons, but declined to certify a broader collective of non-managerial employees, because the plaintiff's affidavit referred to other employees "but [did] not state the employees' titles or work they performed." *Id.* (internal citation omitted). Furthermore, the *Weng* court declined to certify the collective because, for certain employees, "[a]part from the surnames for [these] workers, [the p]laintiffs [had] failed to provide any probative information, such as their approximate wages, hours, and duties[.]" *Id.* That is far from the case here. Plaintiff and other declarants in the Proposed Collective claim they worked as non-exempt IT Hardware Technicians with the same duties (*see* Jackson Decl. ¶ 6; John Decl. ¶ 6; Powell Decl. ¶ 6; Gumbs Decl. ¶ 6; Dias Decl. ¶ 6), making $30 (or, in the case of Dias, $25) per hour (*see* Jackson Decl. ¶ 13; John Decl. ¶ 12; Powell Decl. ¶ 12; Gumbs Decl. ¶ 12; Dias Decl. ¶ 12), while working

specified hours (*see* Jackson Decl. ¶¶ 8-9; John Decl. ¶ 8; Powell Decl. ¶ 8; Gumbs Decl. ¶ 8; Dias Decl. ¶ 8), at specified locations (*see* Jackson Decl. ¶ 7; John Decl. ¶¶ 7, 19, 23; Powell Decl. ¶ 7; Gumbs Decl. ¶ 7; Dias Decl. ¶ 7). And Plaintiff and the other declarants in the Proposed Collective claim to have suffered the same harms, to wit, not being compensated for overtime (*see* Jackson Decl. ¶ 14; John Decl. ¶ 13; Powell Decl. ¶ 13; Gumbs Decl. ¶ 13; Dias Decl. ¶ 13), or for all hours worked (*see* Jackson Decl. ¶¶ 10-11; John Decl. ¶¶ 9-10; Powell Decl. ¶¶ 9-10; Gumbs Decl. ¶¶ 9-10; Dias Decl. ¶¶ 9-10).

These types of factual details pertaining to numerous of Plaintiff's coworkers are more than enough to satisfy Plaintiff's modest burden to show that other putative opt-in plaintiffs were subject to a common policy or plan violative of the FLSA. *See, e.g.*, *Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (certifying collective based on plaintiff's declaration that "he ha[d] personal knowledge from his observations and his conversations with his coworkers" about defendant's common policy). Although Plaintiff certainly could have provided more detail, the question is whether he has provided sufficient detail, and the

Court finds that he has.[5]  Accordingly, the Court will not deny conditional certification on this basis.

###### c.    The Court Limits the Scope of the Proposed Collective

Defendants generally argue that Plaintiff's assertions are vague and conclusory, and do not specifically contest the terms of Plaintiff's Proposed Collective.  (*Cf.* FFT Opp. 6-9; TRS Opp. 3).  However, Defendants FFT and Noorman note that one worker referenced in Plaintiff's declaration might, in fact, be a security guard (*see* FFT Opp. 7 n.1 (citing Jackson Decl. ¶ 26)), and that a worker referenced in another employee's affidavit is, in fact, an "FFT Onsite Supervisor" (*id.* at 8 (citing John Decl. ¶ 16)).  The Court does not (and cannot) wade into the merits of these claims.  However, as noted above, Plaintiff erroneously seeks to use the six-year standard of the NYLL, rather than the two- or three- year standard of the FLSA, and the Court thus modifies the beginning date of the collective.  Further, as discussed below, the Court limits the scope of the Proposed Collective to exclude those employees not working as IT Hardware Technicians.

Plaintiff seeks conditional certification of a collective including those who worked for Defendants "as non-exempt IT Hardware Technicians *or similarly situated employees regardless of job title* and worked in the State of New York from May 17, 2017 to the present."  (Pl. Br. 10 (emphasis added)).  "A FLSA

---

[5]    Once again, at this stage, the Court does not, and cannot, wade into factual disputes about whether certain alleged employees, with whom Plaintiff and Plaintiff's declarants claim to have spoken, worked for FFT and/or TRS, and in what capacity.  (*See* FFT Opp. 8-9).

collective may cover individuals with multiple job functions, 'provided that [all included types of employees] are subject to a common unlawful policy or practice.'" *Gomez* v. *Kitchenette 123 Inc.*, No. 16 Civ. 3302 (AJN), 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)).  Where a plaintiff fails to provide sufficient details that such common unlawful policy or practice affected employees in certain job functions or roles, courts will limit the collective to only those job functions as to which the plaintiff surmounted her evidentiary burden.  *See, e.g.*, *id.* (conditionally certifying a collective of delivery persons, but not all tipped employees, because "the assertions in the affidavit that go beyond delivery persons [were] insufficiently detailed to justify certification of a broader collective").

Because Plaintiff has put forward adequate evidence to show a common policy or plan affecting IT Hardware Technicians employed by Defendants, it follows that the alleged FLSA violations extend to those working as IT Hardware Technicians.  *See, e.g.*, *Zhao* v. *Surge Priv. Equity LLC*, No. 22 Civ. 7314 (KPF), 2023 WL 3477591, at *6 (S.D.N.Y. May 16, 2023) (conditionally certifying a collective of "dry cleaners, pressers, packers, laundry workers, linen section workers, and ironing workers, as Plaintiff submitted information substantiating that workers in such positions were subject to a common unlawful compensation policy").  And to the extent that Defendants' employees are functionally working as IT Hardware Technicians — that is, their job duties include breaking down computer hardware, placing the pieces in bags, and

setting up the hardware at another location (*see* Jackson Decl. ¶ 6; John Decl. ¶ 6; Powell Decl. ¶ 6; Gumbs Decl. ¶ 6; Dias Decl. ¶ 6) — the alleged FLSA violations extend to them.  But the collective that the Court certifies does not — simply by dint of the phrase "or similarly situated employees regardless of job title" (Pl. Br. 10) — extend beyond IT Hardware Technicians, because Plaintiff has not provided any allegations establishing a common plan extending beyond those employed as such.  (*See, e.g.*, Jackson Decl. ¶¶ 6, 18-20, 22, 25 (discussing policies pertaining to IT Hardware Technicians); John Decl. ¶¶ 6, 14-18, 20, 23 (same); Powell Decl. ¶¶ 6, 14-18, 20, 23-24 (same); Gumbs Decl. ¶¶ 6, 14-18, 20, 23-24 (same); Dias Decl. ¶¶ 6, 14-18, 20, 23-24 (same)). Accordingly, the Court limits the collective to all current and former persons who did work for Defendants (whether as employees or independent contractors) as non-exempt IT Hardware Technicians and worked in the State of New York from May 17, 2020, to the present.

### 2. The Court Orders the Parties to Meet and Confer Regarding the Proposed Notices, Will Permit Certain Pre-Certification Discovery, and Will Not Permit Equitable Tolling

Having determined that conditional certification is warranted, the Court turns to issues regarding notice.[6]  The FLSA does not specify the contents of

---

[6]    As Plaintiff notes in his reply, Defendants do not oppose Plaintiff's request to post notice and send it via mail, email, and text message; send reminder notice via mail, email, and text message; allow for a 60-day period to circulate notice; allow for a notice period of six years; and toll the statute of limitations.  (Pl. Reply 3-4).  Nevertheless, lack of opposition is not a guarantee of success.  For example, as discussed *infra*, the Court denies Plaintiff's request to toll the statute of limitations.  The Court acknowledges that other courts in this Circuit have held that a 60-day period is sufficient, and does not disagree with such a request.  *See, e.g.*, *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011).  Finally, while recognizing that some courts have allowed a six-year notice period where, as here, plaintiffs bring FLSA and NYLL

the notice of pending litigation to be provided to potential opt-in plaintiffs. Instead, it vests the Court with broad discretion to fashion notice. *See Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *Gjurovich*, 282 F. Supp. 2d at 106. In assessing the adequacy of proposed notice, courts consider whether the notice form provides "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170; *see also Delaney*, 261 F.R.D. at 59.

### a.    The Proposed Notices

The parties disagree about the contents of the proposed notices. Defendants FFT and Noorman[7] argue that Plaintiff's proposed notice of pendency (Kumar Decl., Ex. 7) is "inaccurate, deficient, and overbroad" (FFT Opp. 10). They register similar objections to Plaintiff's proposed email notice (Kumar Decl., Ex. 9), text message notice (*id.*, Ex. 10), and reminder notice (*id.*, Ex. 11). In sharp contrast, Plaintiff and Defendants FFT and Noorman agree that, if the Court grants Plaintiff's motion, the Court should order the parties to meet and confer regarding the content and form of these notices. (*See* FFT Opp. 11; Pl. Reply 13-14). Accordingly, the parties are directed to meet and confer regarding the language of the proposed notices. Plaintiff shall file the

---

claims in a class action under Federal Rule of Civil Procedure 23, *see, e.g.*, *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563-64 (S.D.N.Y. 2013), this Court has previously written on the issue and concluded in favor of a three-year notice period, *see Sanchez* v. *Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2024 WL 3159821, at *11-12 (S.D.N.Y. June 25, 2024).

[7]    Defendants TRS and Marzo do not register any opposition to the form or content of the proposed notice and consent forms. (*See generally* TRS Opp.).

revised proposed notices within fourteen days from the date of this Opinion.  If

Defendants still have objections, they may file objections within seven days

from the date of Plaintiff's submission.[8]

Plaintiff also seeks an order directing that the proposed court-authorized

notice and consent to join form be posted in a conspicuous place at the work

locations of all covered employees for the duration of the opt-in notice period.

(Pl. Br. 3).  Defendants do not oppose such an order.  After the Court approves

the revised proposed notices, Defendants are ordered to post both the court-

authorized notice and consent to joinder "in a conspicuous location … where

putative collective members congregate." *Huerta* v. *Antillana & Metro*

*Supermarket, Corp.*, No. 23 Civ. 2 (RA) (OTW), 2024 WL 4648016, at *4

(S.D.N.Y. Nov. 1, 2024).

### b.    Pre-Certification Discovery

Separately, Plaintiff seeks an order "compelling Defendants to furnish the

names, titles, compensation rates, last known mailing addresses, email

addresses, all known telephone numbers …, social security numbers, and

dates of employment of all covered employees." (Pl. Br. 3).  Defendants FFT

and Noorman oppose this request on two grounds.  *First*, they argue that they

cannot provide contact information for workers never employed by FFT proper,

---

[8]    While the Court will not pre-judge any potential disputes over the form of the notices, it reminds the parties that it has issued several opinions in potentially analogous contexts concerning the scope of notices in FLSA cases.  *See, e.g.*, *Sanchez*, 2024 WL 3159821, at *11-14; *Ramirez* v. *Liberty One Grp. LLC*, No. 22 Civ. 5892 (KPF), 2023 WL 4541129, at *10-12 (S.D.N.Y. July 14, 2023); *Zhao* v. *Surge Priv. Equity LLC*, No. 22 Civ. 7314 (KPF), 2023 WL 3477591, at *7-8 (S.D.N.Y. May 16, 2023); *Bethel* v. *BlueMercury, Inc.*, No. 21 Civ. 2743 (KPF), 2022 WL 3594575, at *13-15 (S.D.N.Y. Aug. 22, 2022).

or who are not IT Hardware Technicians.  (*See* FFT Opp. 11).  *Second*, they argue that Plaintiff's request for social security numbers is premature at this stage of the litigation.  (*See id.* at 11-12).

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." *Benavides* v. *Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) (internal quotation marks omitted).  Of course, courts can only grant such requests for "employees who worked for defendants within [the collective action's] time period." *Id.*  As such, and consistent with this Opinion, the Court can and does order Defendants FFT, TRS, Marzo, and Noorman to provide the required pre-certification discovery information for members of the collective as certified by this Court during the collective action's time period.

As for social security numbers, the Court recognizes that in some instances, other courts have permitted plaintiffs to request these of putative class members.  *See, e.g.*, *Patton* v. *Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005).  However, the Court believes the greater weight of authority goes against authorizing the collection of such sensitive information "in the first instance and without a showing that the information is necessary." *See Zaldivar*, 166 F. Supp. 3d at 326-27 (collecting cases denying the production of social security numbers); *see also Sanchez* v. *Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2024 WL 3159821, at *11 (S.D.N.Y. June 25, 2024) ("The Court agrees with Defendants that Plaintiff's request for social security numbers is, at

this stage in the collective certification process, 'inappropriate, or at the very least, premature.'" (internal citation omitted)).  If Plaintiff is unable to contact some potential opt-in plaintiffs with the other information they receive from Defendants, Plaintiff may renew his application for social security numbers.

Having addressed this concern, and having reviewed the parties' submissions, the Court finds that production of all the requested information, except the social security numbers, is appropriate.  Accordingly, Plaintiff's request for pre-certification discovery is granted in accordance with this Opinion.  The Court orders that the material authorized above be produced within 14 days from the date of this Opinion.  *Accord Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *6 (S.D.N.Y. Nov. 21, 2019) (explaining that "the more common amount of time given [for pre-certification discovery] is 14 days" (collecting cases)).

### c.    Equitable Tolling

Finally, Plaintiff asks the Court to equitably toll the statute of limitations from the date of the filing of the instant motion until Plaintiff sends notice to the potential opt-in plaintiffs.  (Pl. Br. 21-22).  Although Defendants do not oppose this, it is premature to equitably toll the statute of limitations at this stage in the proceedings.  "Because equitable tolling issues often arise as to individual opt-in plaintiffs ..., courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552,

30

565 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Douglas* v. *Anthem Prods., LLC*, No. 18 Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (collecting cases and explaining that "[w]hether tolling is appropriate [for potential members of a FLSA collective action] is best addressed on an individual basis"). As such, the Court declines to toll the statute of limitations for all prospective plaintiffs at this time, but prospective members of the collective may move for tolling, as needed, on an individual basis. *See Douglas*, 2019 WL 78988, at *5; *Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *10.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. In particular, the Court conditionally certifies a collective including all current and former persons who did work for Defendants (whether as employees or independent contractors) as non-exempt IT Hardware Technicians and worked in the State of New York from May 17, 2020, to the present. The Clerk of Court is directed to terminate the motion pending at docket entry 33.

The parties are ORDERED to meet and confer regarding the language of the proposed notices. Plaintiff shall file the revised proposed notices within 14 days from the date of this Opinion. If Defendants still have objections, they may file objections within seven days from the date of Plaintiff's submission.

Defendants are ORDERED to provide Plaintiff, in a computer-readable format, with the names, titles, compensation rates, last known mailing

addresses, telephone numbers, e-mail addresses, and dates of employment for

employees within the putative class within 14 days of the date of this Opinion.

      SO ORDERED.

Dated:     November 21, 2024
             New York, New York

                                     _____
                                   KATHERINE POLK FAILLA
                              United States District Judge