# WC

## LAW OFFICES OF
## WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

108 West 39th Street, Suite 602 New York, New York 10018 Telephone: 212.583.7400
 Facsimile: 212.583.7401

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & D

January 19, 2026

**VIA ECF**
Hon Stewart D. Aaron
United States District Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

   Re: 23-cv-4118 (SDA) Jackson, et al. v. Total Relocation Services, LLC, et al.

Your Honor:

  This is Plaintiffs' request for approval[1] of the Settlement Agreement[2] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The partially executed Settlement and Release Agreement ("Agreement") appended as Exhibit "1."

 Plaintiffs would respectfully request that the Court without dismissing this action pending the execution of the Agreement by Defendants. While Plaintiffs have executed the Agreement, the Defendants have not yet done so. Plaintiffs submit these materials to expedite the process of fairness approval and would request leave to submit a Stipulation of Dismissal once the Defendants execute their Agreement.

 Please find attached the following Exhibits:
1. Partially Executed Settlement Agreement
2. Counsels' Lodestar
3. Retainer Executed by Lead Plaintiff Michael Jackson

### I.   *Background and Claims*

Defendants own and operate a full service move management firm. Plaintiffs are current and former IT Hardware Technicians who worked for the Defendants. In their role as non-exempt IT Hardware Technicians plaintiffs broke down computer hardware, placed the pieces in bags and then set up the computer hardware in a new locations throughout New York

It is the contention of Plaintiffs that the Defendant misclassified Plaintiffs as independent contractors or as otherwise exempt from overtime pay, inter alia.

Plaintiffs allege that they were not in fact exempt and furthermore that Defendants obliged the Plaintiffs to work off the clock in addition to exceeding the 40 hour per week threshold without overtime premiums.

By way of illustrative example for all similarly situated collective members, Defendants employed Mr. Jackson from July 2020 to the present, Opt-in Plaintiff John from July 2021 to May 2022, Opt-in Plaintiff Powell from November 2020 until June 2021, Opt-in Plaintiff Gumbs from January 2022 until May 2022, and Opt-in Plaintiff Dias from April 2023 until May 2023.

The Defendants dispute the Plaintiffs' claims that they were owed this money. The Defendants challenged the hours that Plaintiffs claim that they worked and whether there was any off the clock work.

Defendants' contend that the Plaintiffs were properly classified as exempt and further that there was no off the clock work. Moreover, that the entities that Plaintiffs' included within their lawsuit are neither employers, joint employers nor an integrated enterprise.

### II.   *The Settlement Reached Between the Parties*

The total aggregate value of the Plaintiffs claims was in excess of $900,000.00 if all of their claims were credited by a trier of fact.

However, there was significant litigation risk on the issue of classification, the issue of off-clock work and the risk in determining which of the Defendants, if any, was the employer responsible for ensuring Plaintiffs were paid correctly.

The Defendants were also each situated differently in terms of the likelihood of collection. There is a risk that if the Plaintiffs were to pursued their claims to an adjudicated outcome, they would have won only against entities which would not have the capability to satisfying their verdict.

Plaintiffs believe that the $150,000.00 settlement amount split between the two groups of Defendants -  Total Relocation Services, LLC ("TRS") and Christopher Marzo ("Marzo) paying $75,000.00 and Friendly Field Technicians LLC ("FFT"), and Suzanne Noorman ("Noorman") paying another $75,000.00 - is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances.  In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiff prefers to receive their proceeds without the inevitable delay and significant risks that continued litigation would entail.

### III.    *The Court Should Find the Proposed Settlement Fair and Reasonable*

A FLSA settlement should receive judicial approval where it is "fair and reasonable."  *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotations omitted).  Moreover,

> "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed

3

issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)

(quotations omitted).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiffs' Range of Possible Recovery*

As stated above, the proposed settlement represents 16.7% of the Plaintiffs' claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiffs faced. It will also enable Plaintiffs to avoid anticipated burdens and risks in going forward. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

Avoidance of Anticipated Burdens and Expenses

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial. In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that Plaintiffs

4

will recover most of their damages within 30 days of being effective.

### Litigation Risks

Importantly, Plaintiffs' maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce the Plaintiffs' recovery. This makes the amount of post-trial recovery uncertain. Settlement permits the Plaintiffs to avoid the risk of obtaining no recovery or substantially reduced recovery at trial. *See, Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017). Lastly, there are also serious concerns about collectability as Company has received reduced revenue during the pandemic.

### Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties participated in arm's length settlement discussions to arrive at this settlement. As such, because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

### Possibility of Fraud or Collusion

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 U.S. Dist. LEXIS 57918, at *12

5

(S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV. *Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount*

Plaintiffs 'counsel is seeking an approved fee of $49,950.00, which equates to 33.3% of the gross recovery and a waiver of out-of-pocket expenses on the part of counsel. These costs total $1,232.00 and consists of the filing fee and fee for service of process.

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3-4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiffs' counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended 4.4 hours in the prosecution of this case, Exhibit "2" and Mr. Kumar spent 197 hours. Exhibit "2". My paralegal Mr. Nicolas Duran expended 7.4 hours and my secretary expended 5 hours.

Counsel would also note that we are committing ourselves to monitoring a payment plan which endures for many months where we will be unable to further bill for our time apart from what is approved here.

"To determine the quality of representation, courts review, among other things,

6

the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

As relevant to this motion, the Firm, which I founded, focuses on the representation of plaintiffs in class and collective wage and hour litigation in state and federal court. In addition, the Firm also represents plaintiffs in a variety of employment matters, including individual discrimination, harassment, and retaliation claims. Further, the Firm represents plaintiffs in personal injury and medical malpractices cases.

With respect to my experience, I graduated *summa cum laude* from Fordham University with a B.S. in Accounting in 1976. I then attended the University of San Diego School of Law where I graduated in 1979. Later that same year I was admitted to the California State Bar, and in 1981, I was admitted to the New York State Bar. Since being admitted in New York, I have also been admitted into the bars of both Texas, Maryland and New Mexico. I have previously argued before the Second Circuit Court of Appeals, and I actively practice in the Southern and Eastern Districts of New York. From 1981 to 1986, I served as an Assistant District Attorney in Bronx County, and tried felony cases involving violent street crime and Class A-1 narcotics sales. Thereafter I established my own private practice, where for many years I focused on personal injury and medical malpractice work. I am a successful trial attorney, having personally taken two verdicts in eight figures have been lead counsel in many cases which produced numerous settlements and verdicts in seven figures. I was lead counsel on a case in the U.S. District Court in White Plains in September 2025 in which I obtained a $3M verdict, which was subsequently settled for $2.75M on a $1M policy. I am still a member of the New York State Trial Lawyers Association and I was formerly a member of the Board of Directors. In 2009, I began development of the wage and hour practice of the Firm. Since then, the Firm has filed over 1,000 individual, collective, and class actions under the Fair Labor Standards Act and New York Labor Law.

I am a member of the New York chapter of the National Employment Lawyers Association ("NELA") and I regularly keep up with changes in the employment law field

by monitoring the new developments on the NELA listserve. I am also fluent in Spanish, which is very valuable in this area of law, where many employees are Hispanic and many of them will likely not be well conversant in English.

I have also been certified as Class Counsel in several wage and hour actions. *See, e.g. Brightly v. Hawksmoore Restaurant Corp., et al*, Index No. 616331/2024 (Sup. Ct. Nassau Cnty. Nov. 19, 2024) (*See* Dkt. No. 12); *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5 (E.D.N.Y. 2019) (Order granting preliminary approval of a class and appointing William Cafaro, Esq. as Class Counsel); *Andrew v. Lakhi General Contractor Inc., et al*, 16-cv-02216 (RJD)(JO), D.E. 174 (E.D.N.Y. May 29, 2018) (Order granting preliminary approval of a class and appointing William Cafaro, Esq. as Class Counsel); *Mendes-Garcia v. 77 Deerhurst Corp.*, 2014 U.S. Dist. LEXIS 188290, at *12-13 (S.D.N.Y. Aug. 18, 2014) (William Cafaro, Esq. being appointed class counsel on a wage and hour action with approximately 175 opt ins); *Chavarria v. N.Y. Airport Serv.*, No. 10-CV-1930 (MDG), 2011 U.S. Dist. LEXIS 78828, at *5 (E.D.N.Y. July 20, 2011).

Amit Kumar, who also worked on this case, began as an associate with my office in 2013 and acted as the Managing Attorney of the firm from 2017 to 2025, when he left to work on the management side. He earned his B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, he worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP, and Outten & Golden LLP. Also, while in law school, he was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. He was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year was admitted to practice before the Southern and Eastern Districts of New York. He was admitted to the Federal District Court of New Jersey in 2019. During his tenure with the firm, he was responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, he conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage

8

and hour matters. Moreover, he was selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017, 2018, 2019, and 2020. He was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Kumar at rates of $300.00 to $400.00 per hour.

My normal hourly rate for wage and hour actions is $500.00 per hour and the Plaintiffs are requesting this rate for my work in this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience) At the requested rate, the total lodestar is $64,900.00. We are further waiving $1,232.00 in out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The out of pocket expenses are:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 402.00 | Cost for filing in Court |
| Gotham Process | $ 830.00 | Service on Defs |
|  | $ 0.00 | Mediator |
| Total | $ 1,232.00 | |

The preceding out of pocket expenses are being waived.

In the event the Court disagrees with our lodestar, counsel would request that the

Court consider a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used to compensate Plaintiff's counsel for time that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately 2.15 which is well within the range granted by courts in this circuit.

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

## V.    *Conclusion*

For the reasons set forth above the Parties jointly request that the Court approve the settlement as reflected in the Amended Settlement Agreement. Plaintiffs' counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
By   William Cafaro
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10
(212) 583-7400
bcafaro@cafaroesq.com

cc:
Defense Counsel (via ECF)